UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

PHILLIP RANDALL TILLIE,

              Plaintiff,              Case No. 2:22-cv-43

v.                                 Honorable Paul L. Maloney

UNKNOWN PORTICE et al.,

              Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendant O'Brien for failure to state a claim. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment and Fourteenth Amendment claims against Defendant Portice. Plaintiff's First Amendment retaliation claim against Defendant Portice remains in the case.

**Discussion**

I.     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following URF officials: Corrections Officer Unknown Portice and Hearings Officer Unknown O'Brien. (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that he "first had a[n] altercation with C/O Portice when he repeatedly made sexual remarks towards [Plaintiff]." (*Id.*, PageID.3.) Plaintiff asked Corrections Officer Portice "to stop with no help from co-workers." (*Id.*) Plaintiff states that Defendant Portice "asked [Plaintiff] to suck his dick." (*Id.*) Thereafter, Plaintiff filed a grievance and a Prison Rape Elimination Act (PREA) grievance due to Corrections Officer Portice's "repeated sexual advances." (*Id.*) Plaintiff states that "[b]efore filing the PREA [grievance], [he] repeatedly requested a PREA form from C/O Portice and first shift staff and [Plaintiff] was denied." (*Id.*) Subsequently, Corrections Officer Portice "retaliated by writing a[n] excessive noise misconduct[,] which was a falsified misconduct and [Plaintiff] was found guilty." (*Id.*) Corrections Officer Portice "later told [Plaintiff,] 'Now we have a[n] understanding.'" (*Id.*)

Plaintiff also states that Corrections Officer Portice "was extremely upset due to [Plaintiff's] filed PREA [grievance] and decided to falsify a misconduct report" regarding Plaintiff possessing a "stinger."[1] (*Id.*) The "stinger" was found in Plaintiff's cellmate's "area of control," but Corrections Officer Portice "said that he found it under [Plaintiff's] mattress." (*Id.*) On April

---

[1] A "stinger" is a "makeshift heating element." *Stallings v. Best*, 777 F. App'x 831, 831 (7th Cir. 2019).

20, 2021, Hearings Officer O'Brien presided over the hearing for Plaintiff's "Possession of Dangerous Contraband" misconduct charge for his possession of the "stinger." (*Id.*) Plaintiff contends that Hearings Officer O'Brien "violated [his] due process [rights] by violating Administrative Rule, which states [Plaintiff] ha[s] a right to present a handwritten prisoner statement, which she denied." (*Id.*) Plaintiff also states that "the hearings handbook [and] [Policy Directive] 03:03.105 clearly state that there is a time limit when you['re] placed on non-bond for a class 1 misconduct." (*Id.*) Plaintiff further states that he "requested any documents used as evidence at the hearing," "the Investigator[']s evaluation, and the entire contents of the hearing report," and Hearings Officer O'Brien "denied everything without reason." (*Id.*)

Plaintiff does not identify the specific constitutional rights that Defendants infringed; however, his allegations against Corrections Officer Portice implicate the protections of the Eighth Amendment, the First Amendment, and the Due Process Clause of the Fourteenth Amendment. Plaintiff's allegations against Hearings Officer O'Brien implicate the Due Process Clause of the Fourteenth Amendment. As relief, Plaintiff requests compensatory, nominal, and punitive damages, as well as injunctive relief. (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

3

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.   Eighth Amendment

Plaintiff first alleges that Defendant Portice's "sexual remarks" violated his rights under the Eighth Amendment. (Compl., ECF No. 1, PageID.3.)

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam)

4

(quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

Here, Plaintiff alleges that he "first had a[n] altercation with [Defendant] Portice when [Defendant] repeatedly made sexual remarks towards [Plaintiff]," and Plaintiff "continually asked [Defendant Portice] to stop." (Compl., ECF No. 1, PageID.3.) Plaintiff states that Defendant Portice "asked [Plaintiff] to suck his dick." (*Id.*)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, in the context of claims against prison officials, the United States Court of Appeals for the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional

and deplorable, does not necessarily rise to constitutional dimensions. *See, e.g.*, *Ivey*, 832 F.2d at 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (concluding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003) (finding that verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Further, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F. App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a male prison official sexually harassed a female

prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Id.* at 1096. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.*

*Rafferty*, however, is distinguishable from Plaintiff's claim. Here, Plaintiff alleges in a conclusory manner that he "first had a[n] altercation with [Defendant] Portice when [Defendant] repeatedly made sexual remarks towards [Plaintiff]," and Plaintiff "continually asked [Defendant Portice] to stop." (Compl., ECF No. 1, PageID.3.) Although Plaintiff describes the remarks as occurring "repeatedly," Plaintiff does not provide any further allegations regarding the specific duration of Defendant Portice's remarks. (*Id.*) Indeed, Plaintiff's only allegation regarding the duration of the "repeated" remarks is that he had "a[n] altercation" with Defendant Portice, suggesting that it was a single incident. (*Id.*) Further, although Plaintiff provides one example of Defendant Portice's "sexual remarks," he does not provide any additional allegations regarding how Defendant Portice's statements were "sexual remarks" or "sexual advances." (*Id.*) Additionally, unlike in *Rafferty*, none of Plaintiff's allegations suggest that Defendant Portice's "sexual remarks" were made in a private or personal setting. (*Id.*)

Under these circumstances, Defendant Portice's remarks, while offensive, did not evidence the sort of coercive sexual demand at issue in *Rafferty*. As a result, the alleged sexual harassment falls short of the severity necessary to state an Eighth Amendment claim. *Rafferty*, 915 F.3d at 1095.

### B.      First Amendment Retaliation

Plaintiff alleges that his First Amendments rights were violated when Defendant Portice retaliated against him for filing grievances about Defendant Portice's "sexual remarks" by filing two false misconduct charges against him. (Compl., ECF No. 1, PageID.3.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that Defendant Portice retaliated against him by filing false misconduct charges for "excessive noise" and "Possession of Dangerous Contraband" after Plaintiff filed a grievance and a PREA grievance regarding Defendant Portice's "sexual remarks." (Compl., ECF No. 1, PageID.3.) An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected

petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Plaintiff therefore has alleged sufficient facts to meet the first element of a retaliation claim because Plaintiff's filing of grievances against Defendant Portice constitutes protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). The issuance of a misconduct charge can be considered an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *see also Hill*, 630 F3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"); *Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."). Thus, Plaintiff has alleged sufficient facts to meet the second element of a retaliation claim because he alleges that Defendant Portice wrote two misconduct charges against him, each of which constitute an adverse action.

Finally, to sufficiently state a First Amendment retaliation claim, Plaintiff must allege facts that support an inference that the adverse action was motivated by the protected conduct. Plaintiff alleges that Defendant Portice's issuance of the "false" misconduct charges followed Plaintiff's filing of a grievance and a PREA grievance against Defendant Portice. (Compl., ECF No. 1, PageID.3.) Temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379

9

F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)); *see also Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance). Here, Plaintiff's factual allegations, taken as true and in the light most favorable to Plaintiff, support the inference that the adverse actions were connected to the protected conduct temporally.

Accordingly, the Court concludes that, at this stage of the proceedings, Plaintiff's allegations against Defendant Portice are sufficient to state a First Amendment retaliation claim.

### C.      Fourteenth Amendment

Plaintiff alleges that his due process rights under the Fourteenth Amendment were violated (i) when Defendant Portice issued two "false" misconduct charges and (ii) during the hearing that Defendant O'Brien held for one of the misconduct charges. (Compl., ECF No. 1, PageID.3.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth

the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that Defendant Portice wrote Plaintiff a false "excessive noise" misconduct charge and a false "Possession of Dangerous Contraband" misconduct charge. (Compl., ECF No. 1, PageID.3.) With respect to the excessive noise charge, a misconduct charge for excessive noise is a Class III, or minor, misconduct under the MDOC disciplinary regime. MDOC Policy Directive 03.03.105, Attach. C (eff. July 1, 2018); *see id.* ¶ B. Plaintiff could not have been denied good time or disciplinary credits as a result of a Class III misconduct conviction. *See id.* ¶ AAAA. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

With respect to Plaintiff's "Possession of Dangerous Contraband" misconduct charge, pursuant to MDOC Policy Directive 03.03.105, this charge is a Class I, or major, misconduct. MDOC Policy Directive 03.03.105, Attach. A (eff. July 1, 2018); *see id.* ¶ B. Plaintiff's major misconduct charge and conviction likely affected a number of Plaintiff's interests, but none of

them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for offenses committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34; *see also* Mich. Dep't of Corr. Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber =636229 (last visited Mar. 9, 2022). Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. Mich. Comp. Laws § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. Indeed, in this action, Plaintiff does not provide any allegations regarding the sanctions he received as a result of his misconduct convictions. Plaintiff therefore has failed to show that any sanction he received was an "atypical" and "significant deprivation." *Id.*

Moreover, to the extent that Plaintiff was placed in segregation for a period of time as a result of the misconduct tickets, his placement in segregation does not constitute an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x

865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest).

Furthermore, to the extent that Plaintiff lost certain privileges for a period of time, such as yard time or communication with friends and family, as a result of his misconduct convictions, if confinement in segregation does not implicate a protected liberty interest, it follows that the loss of these privileges, which are lesser punishments, do not implicate such an interest. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment due process claim against Defendants Portice and O'Brien.[2]

---

[2] Moreover, to the extent that Plaintiff intended to raise a substantive due process claim regarding Defendant Portice's issuance of misconduct charges, which Plaintiff contends were "false," and the manner in which Defendant O'Brien conducted the disciplinary hearing, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

13

*Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Accordingly, Plaintiff's allegations that Defendant O'Brien violated MDOC policy fail to raise a cognizable federal constitutional claim.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant O'Brien will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eight Amendment and Fourteenth Amendment claims against Defendant Portice. Plaintiff's First Amendment retaliation claim against Defendant Portice remains in the case.

An order consistent with this opinion will be entered.

Dated:   March 24, 2022                         /s/  Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge