UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| PHILLIP RANDALL TILLIE, #636229, | Case No. 2:22-cv-43 |
| Plaintiff, | Hon. Paul L. Maloney<br>U.S. District Judge |
| v. | |
| MCKINLEY PORTICE, | |
| Defendant. _____/ | |

**REPORT AND RECOMMENDATION**

**I.   Introduction**

This Report and Recommendation (R&R) addresses Defendant Corrections Officer Portice's motion for summary judgment based on Plaintiff's failure to exhaust his administrative remedies. (ECF No. 24)

Plaintiff — state prisoner Phillip Randall Tillie — filed suit pursuant to 42 U.S.C. § 1983 on February 28, 2022. In his unverified complaint, Tillie asserts that while he was confined at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan, URF Corrections Officer (CO) Portice retaliated against Tillie for filing a Prison Rape Elimination Act (PREA) grievance by issuing Tillie a false Class III misconduct ticket for excessive noise, and a false Class I misconduct ticket for possession of dangerous contraband. Additionally, Tillie claims a violation of due process by Hearing Officer O'Brien. On March 24, 2022, this Court issued a screening opinion that dismissed Tillie's claim against Hearing Officer O'Brien.

CO Portice now moves for partial summary judgment, asserting that Tillie did not properly exhaust his administrative remedies with respect to his retaliation claim based on the excessive noise misconduct ticket. (ECF No. 24, PageID.95.) More specifically, CO Portice argues that Tillie was required to raise the issue of retaliation during his hearing on the excessive noise ticket, and that he did not. (*Id.*, PageID.94.) In support of this argument, CO Portice points to an April 9, 2021 excessive noise misconduct hearing report that does not reflect Tillie raising the issue of retaliation during his hearing. (EFC No. 25-4, PageID.156.) In response, Tillie says that Defendant relies on the wrong misconduct ticket; Defendant relies on the excessive noise misconduct issued by CO Lumsden and not the excessive noise misconduct issued by CO Portice. (EFC No. 32, PageID.173.) Tillie also asserts that by intimidating Tillie, URF staff rendered the administrative remedies unavailable to him. (*Id.*)

The undersigned respectfully recommends that the Court deny Defendant's motion for summary judgment because a genuine issue of material fact remains. Tillie claims CO Portice issued two retaliatory misconduct tickets after Tillie filed his PREA grievance but did not specify an exact timeframe for when either the PREA grievance or the first misconduct ticket was written. At the time of the complaint, Tillie had been confined at URF for three years. (EFC No. 32, PageID.172.) CO Portice only provided the Court with misconduct hearing reports for misconduct tickets filed narrowly around the contraband misconduct ticket. Without the correct excessive noise misconduct hearing report, it is impossible to evaluate whether Tillie

2

effectively exhausted the misconduct hearing process. Therefore, CO Portice has failed to meet the summary judgment burden set forth in Federal Rule of Civil Procedure 56.

## II.   Factual Allegations

Tillie states he filed a PREA grievance against CO Portice for sexual remarks and advances. (EFC No.1, PageID.3.) Tillie notes he asked for a PREA grievance form multiple times before receiving one to report CO Portice. (*Id.*) After Tillie filed the PREA grievance, he says CO Portice issued him a false misconduct report for excessive noise. (*Id.*) Tillie recalls that after this first misconduct report CO Portice stated, "now we have an understanding." (*Id.*) But according to Tillie, CO Portice did not stop there. On an unspecified later date, CO Portice searched Tillie's room and found a stinger.[1] (*Id.*) CO Portice wrote Tillie a misconduct ticket for possession of dangerous contraband. (*Id.*) A fellow inmate claimed the stinger belonged to him, but the hearing officer ultimately found Tillie guilty of Class I misconduct. (*Id.*)

## III.  Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient

---

[1]   A "stinger" is a "makeshift heating element." *Stallings v. Best*, 777 F. App'x 831, 831 (7th Cir. 2019).

disagreement to require submission to a jury[2] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## IV. Exhaustion

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which the Defendant has the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden—the plaintiff on a claim for relief or the defendant on an affirmative defense—his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that

---

[2] If defendants move for summary judgment on the basis of exhaustion under the PLRA, and the court determines that there is a genuine issue of material fact, the issue need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015). Instead, the court may conduct a bench trial to resolve the issue. (*Id.*) In a bench trial on exhaustion, the defendants must show that the plaintiff failed to exhaust his administrative remedies by a preponderance of the evidence. *Id.* at 677 (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)) ("Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence."); *Richards v. Perttu*, No. 2:20-CV-76, 2022 WL 842654, at *1 (W.D. Mich. Mar. 22, 2022) (affirming a magistrate judge's ruling that the preponderance of the evidence standard applies in a bench trial on exhaustion).

4

the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). To properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process

through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective March 18, 2019) sets forth the applicable three-part grievance procedure for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ Q. If informal resolution is unsuccessful, the inmate may proceed through the three steps of the grievance process. *Id.* at ¶¶ Q, W.

When grievance procedures are not available because the issue presented is non-grievable, exhausting those procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well-known proverb states, they cannot have their cake and eat it too."). However, when other administrative remedies are available, the prisoner is required to exhaust those remedies prior to filing a federal lawsuit.

For example, when an inmate claims that he received a retaliatory misconduct ticket, whether a Class I, Class II or Class III misconduct, the inmate must raise the issue during the initial misconduct hearing. *Siggers v. Campbell*, 652 F.3d 681, 693-94 (6th Cir. 2011). If the inmate is claiming to have received a retaliatory Class I misconduct, he must then submit a Request for Rehearing raising the retaliation issue. *Id.* at 693-94; MDOC PD 03.03.105 ¶¶ SSS-TTT (setting forth the Class I misconduct appeal process). Alternatively, if the inmate is claiming to have received a retaliatory Class II or III misconduct, he must file an appeal based on retaliation. *Rush v. Newcomb*, No. 2:18-cv23, 2019 WL 3755967, at *6 (W.D. Mich. May 24, 2019),

7

*R&R adopted*, 2019 WL 3733846 (W.D. Mich. Aug. 8, 2019); MDOC PD 03.03.105 ¶¶ UUU-XXX (setting forth the Class II and III misconduct appeal process).

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[3]

---

[3] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

V.  Analysis

CO Portice argues that Tillie did not properly exhaust administrative remedies because he failed to raise retaliation claims during the Class III excessive noise misconduct hearing. (EFC No. 25, PageID.85.) However, based on Tillie's verified response to the motion for summary judgment, it appears that the misconduct hearing report CO Portice relies upon is the incorrect report. (EFC No. 32, PageID.173 (Tillie's Verified Response).) CO Portice provides a misconduct ticket issued by CO Lumsden, who is not a defendant in this matter. (EFC No. 25-4, PageID.156-157.) A portion of Lumsden's excessive noise ticket against Tillie is shown below.



(*Id.*, PageID.157.)

In response to Tillie asserting that he relied upon the wrong misconduct hearing report, CO Portice provides an affidavit of URF Litigation Coordinator Kimberly Benoit stating CO Lumsden was the only officer who issued Tillie an

9

excessive noise misconduct ticket "around and before April 10, 2021, when Tillie received his class I possession of contraband ticket." (EFC No. 34-1, PageID.2.) But nowhere does Tillie specify that CO Portice issued the excessive noise misconduct ticket around the same time as the contraband misconduct ticket. In his complaint, Tillie states:

> I first had A altercation with c/o Portice when he repeatedly made sexual remarks towards me, I continually asked him to stop with No help from co-worker's. I then filed A grievance and A Prea due to his repeated sexual advance's. c/o Portice later retaliated by writing A excessive noise Misconduct which was A falsified misconduct and I was found guilty.

(EFC No. 1, PageID.3.)

Additionally, in a verified statement attached to his response to CO Portice's motion for summary judgment, Tillie states:

> 2.) That when I requested A Prea Grievance form, Defendant Portice Denied me one multiple times.
>
> 3.) That once I was able to file the Prea Grievance, Defendant Portice was angry and filed one of his two falsified Misconducts in retaliation, and once I was found guilty, Defendant Portice asked me [If we had A understanding]?

(EFC No. 32-1, PageID.178.)

CO Portice assumes a close timeframe between the two misconduct tickets. However, this assumption does not appear to be consistent with Tillie's allegations. It is possible that CO Portice issued the allegedly false excessive noise misconduct ticket on a date that Litigation Coordinator Benoit would not consider "around and

before April 10, 2021." And it is possible that Tillie adequately raised retaliation during the misconduct hearing process for that ticket.[4]

As set forth above, a prisoner's failure to exhaust their administrative remedies is an affirmative defense. *Jones*, 549 U.S. at 218-19. It is CO Portice's burden to show that there were administrative remedies available to Tillie, and that Tillie failed to exhaust them. Here, CO Portice does not meet his burden because the misconduct hearing report that CO Portice relies upon was issued by an entirely different officer. Per Tillie's complaint and verified response, Tillie received another excessive noise misconduct ticket from CO Portice. (EFC No. 1, PageID.3.) CO Portice has not provided the correct misconduct ticket, nor has CO Portice established that he did not in fact issue the alleged misconduct ticket. Without such documentation, the Court cannot determine whether Tillie exhausted his administrative remedies. As such, there are genuine issues of material fact bearing on whether Tillie exhausted his retaliation claim via the misconduct hearing process. Because there are genuine issues of material fact bearing on whether Tillie exhausted his claim through the misconduct hearing process, the undersigned need not consider Tillie's allegation that URF staff intimidated Tillie, rendering his administrative remedies unavailable.[5]

---

[4] In his response, Tillie points out CO Portice mentions the wrong misconduct hearing but does not state he raised a retaliation claim at the correct hearing. (EFC No. 32, PageID.173.) Regardless, Defendant bears the burden of proving that Tillie failed to exhaust his administrative remedies.

[5] In any event, Tillie's argument appears to be that staff intimidation rendered the grievance process unavailable (ECF No. 32, PageID.172); as set forth above, the

11

## VI. Recommendation

The undersigned respectfully recommends that the Court deny Defendant's motion for partial summary judgment because there is a genuine issue of material fact bearing on whether Tillie exhausted his retaliation claim during his excessive noise misconduct hearing process.

If the Court accepts this recommendation, both of Tillie's retaliatory misconduct claims against CO Portice will remain.

Dated:  June 13, 2023                                   /s/ *Maarten Vermaat*
                                                        MAARTEN VERMAAT
                                                        U. S. MAGISTRATE JUDGE

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

misconduct hearing process was the administrative remedy that Tillie had to exhaust, not the grievance process, *Siggers*, 652 F.3d at 693-94.